IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-00754-GCM

| | |
|---|---|
| AMY LESNESKI, an Individual, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ROSS STORES, INC., a Delaware ) | |
| Corporation, and MARK STEGALL, an ) | |
| Individual jointly and severally, directly and ) | |
| vicariously, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court upon the Defendants' Motion to Dismiss or in the Alternative, to Stay This Action and Compel Arbitration. (Doc. No. 9). Plaintiffs have filed a response memorandum and defendants have filed a reply memorandum. This matter is now ripe for disposition.

**I.     BACKGROUND**

Ross is an off-price retailer of brand-name and designer apparel, accessories, footwear and home goods. Ross hired Plaintiff as a Supervisor at its Rock Hill Distribution Center Operations, 2nd Shift on October 6, 2014. On December 18, 2014, Plaintiff signed a Dispute Resolution Agreement ("DRA") with Ross. The DRA includes the following language:

> This Agreement sets forth the procedures that you and Ross Stores, Inc. ("Ross") mutually agree must be used to resolve any and all "Covered Disputes" arising out of or related to your employment with Ross or its termination. Covered Disputes will be resolved by final and binding arbitration and not by a court or jury.

> For the purposes of this Agreement Covered Disputes include any and all disputes both between you and Ross and between you and any other Ross Associate, agent or employee of Ross, arising out of or related to your employment with or separation of employment from Ross regardless of who initiates the claim. Covered Disputes include, but are not limited to, disputes related to the use of trade secrets, unfair competition, compensation, termination, retaliation, whistleblower claims, workers' compensation retaliation claims, harassment, discrimination and claims based on the Civil Rights Act of 1964, the American with Disabilities Act, the Age Discrimination in Employment Act, Family Medical Leave Act, the Employee Retirement Income Security Act, Fair Labor Standards Act and all similar state statutes and all related common law claims.

Doc. No. 10 at 2-3. On or about June 25, 2015, Plaintiff resigned from her employment with Ross. Plaintiff filed a Complaint in the United States District Court for the Western District of North Carolina on November 1, 2016. In her Complaint, Plaintiff alleges that she was harassed on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, and she raises violations of the common law.

Upon receiving notice of the filing of this lawsuit, Defense counsel advised Plaintiff's counsel that Plaintiff had entered into the DRA with Ross and provided Plaintiff's counsel with a copy of the same. In this motion, Defendants ask this Court to dismiss or stay this case and Plaintiff be compelled to pursue her claims in accordance with the DRA and FAA.

## II.     DISCUSSION

The Federal Arbitration Act (FAA) provides:

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2012)

As an initial matter, the Court notes "North Carolina has a strong public policy favoring arbitration." *Raper v. Oliver House, LLC,* 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (quoting *Red Springs Presbyterian Church v. Terminix Co.,* 458 S.E.2d 270, 273 (N.C. Ct. App. 1995; *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008)). And this preference has been widely recognized in the employment context for both state and federal law claims. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121-23 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context"); *Thomas v. The Right Choice MWM, Inc.*, 2014 WL 1632946 (W.D. N.C. Apr. 23, 2014) (compelling arbitration of Title VII, ADA and ADEA claims); *Mahmoud v. Carmax Auto Superstores, Inc.*, 2011 WL 32518 (W.D. N.C. Jan. 5, 2011) (Title VII and wrongful termination in violation of North Carolina public policy claims subject to compulsory arbitration).

To compel arbitration, the court must conclude that: (1) a dispute exists between the parties; (2) there is a valid, written agreement to arbitrate that encompasses the dispute; (3) the transaction relates to interstate commerce; and (4) Plaintiff's refusal to arbitrate. *See American Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). The first and fourth elements are clearly met as there is certainly a dispute between the parties and Plaintiff has refused to submit her claims to arbitration and, instead, has filed the instant lawsuit.

The United States Supreme Court has held that the FAA's reference to interstate commerce reflects Congress' intent to extend the FAA's coverage to the limits of federal power under the Commerce Clause. *Allied-Bruce Terminix Comp., Inc. v. Dobson*, 513 U.S. 265, 277-81 (1995). The Court also recognized that the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term in order to

3

effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id.* at 274. Thus, a matter "involves" commerce under the FAA if it merely "affects" commerce – a standard commonly applied by the courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.* Accordingly, with the exception of agreements involving transportation workers, the FAA applies to all agreements to arbitrate employment disputes, provided the employment involves interstate commerce. *See Circuit City*, 532 U.S. at 120-21.

Ross operates locations in more than 30 States, the District of Columbia and Guam, which evidences that its business involves interstate commerce. Plaintiff's employment with, and agreement to arbitrate claims against her multistate employer, involved interstate commerce. *See Circuit City*, 532 U.S. at 123 (holding that the FAA was applicable to arbitration agreement between a sales associate and her multistate employer); *Allied-Bruce*, 513 U.S. at 281-82 (finding jurisdictional element of the FAA was met by, among other things, multistate nature of company entering into contract).

Plaintiff does not dispute that those three elements are met in this case. However, Plaintiff argues that the DRA is not a valid, written agreement because (1) the signing of the DRA was procedurally unconscionable, (2) the DRA itself is substantively unconscionable and (3) there was no consideration.

### a. Procedural Unconscionability

The Court first notes that the FAA "require[s] the application of contract law to determine whether a particular arbitration agreement is enforceable; thereby placing arbitration agreements "'upon the same footing as other contracts.'" *Futrelle v. Duke Univ.*, 127 N.C.App.

4

Case 3:16-cv-00754-GCM    Document 21    Filed 07/07/17    Page 4 of 10

244, 247-248 (1997) (quoting *Doctor's Associates, Inc. v. Casarotto*, 116 S.Ct. 1652, 1656 (1996). So, arbitration agreements may be invalidated through generally applicable contract defenses, such as unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001).

Unconscionability is an affirmative defense, so the party asserting it bears the burden of proof. *Westmoreland v. High Point Healthcare Inc*., 721 S.E.2d 712, 717 (N.C. Ct. App. 2012) (citing *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008)). The North Carolina courts have set a high standard for a court to hold a contract unenforceable because it is unconscionable, which is

> only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

*Westmoreland*, 721 S.E.2d at 716 (citing *Brenner v. Little Red Sch. House Ltd.,* 274 S.E.2d 206, 210 (N.C. 1981); *Tillman,* 655 S.E.2d at 369)). "An inquiry into unconscionability requires that a court 'consider all the facts and circumstances of a particular case,' and '[i]f the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable.'" *Westmoreland*, 721 S.E.2d at 716 (citing *Tillman,* 655 S.E.2d at 369; *Brenner,*274 S.E.2d at 210)).

"[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Westmoreland*, 721 S.E.2d at 717 (citing *Tillman,* 655 S.E.2d at 370) (plurality opinion) (citing *Rite Color Chem. Co. v. Velvet Textile Co.,* 411 S.E.2d 645, 648 (N.C. Ct. App. 1992)). Whereas, "[s]ubstantive

5

unconscionability...refers to harsh, onesided, and oppressive contract terms." *Westmoreland*, 721 S.E.2d at 719 (citing *Tillman,* 655 S.E.2d at 370; *Rite Color Chem. Co.,* 411 S.E.2d at 648-49)).

Plaintiff claims the DRA was procedurally unconscionable because of unfair surprise, lack of meaningful choice, and unequal bargaining power. In general these claims stem from the Plaintiff being presented with and signing the DRA 2 months after she was hired. Plaintiff has failed to present case law in support of these claims. The North Carolina courts and the Fourth Circuit have upheld arbitration agreements entered into 5 years and 3 years after the start of the Plaintiff's employment. *See Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879 (N.C. Ct. App. 1999); *O'Neil v. Hilton Head Hospital*, 115 F.3d 272 (4th Cir. 1997).

Plaintiff's claims for procedural unconscionability boil down to the fact that she was shown the DRA 2 months after the start of her employment, she had to sign the DRA or lose her job, and Defendant is a large corporation. In *Howard*, the arbitration agreement was found to be valid even though the plaintiff was not told of the arbitration agreement at the time of hiring, plaintiff had to sign it or be fired, and defendant was a large corporation. *Id.* at 880.

In this case, Plaintiff has not presented facts to carry their burden of proof that procedural unconscionability existed.

### b. Substantive Unconscionability

The Court now turns to the Plaintiff's claims that the DRA is substantively unconscionable because the contract terms are harsh, one-sided, and oppressive. All of Plaintiff's claims of substantive unconscionability revolve around Plaintiff's lack of knowledge of the agreement terms when it was signed and the agreement, specifically the class-action waiver, being allegedly one-sided.

The law in North Carolina is that "the law will not relieve one who can read and write from liability upon a written contract, upon the ground that [s]he did not understand the purport of the writing, or that [s]he has made an improvident contract, when [s]he could inform [herself] and has not done so." *Westmoreland*, 721 S.E.2d at 718 *Weaver v. St. Joseph of the Pines, Inc.,* 652 S.E.2d 701, 712 (N.C. App. 2007)).

Plaintiff cannot now allege that the agreement is unconscionable because she failed to read or understand it, especially when she was affirmatively advised that she could seek legal advice prior to signing. *Westmoreland*, 721 S.E.2d at 718. The DRA clearly lists the disputes that are covered by the agreement, and the DRA clearly states that Plaintiff and Ross were waiving their right to a jury trial with respect to those disputes. Again, Plaintiff has not cited to any case law in making these allegation.

Plaintiff has failed to meet her burden of demonstrating that the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and [that] the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Westmoreland*, 721 S.E.2d at 716 (citing *Brenner,* 274 S.E.2d at 210, quoted with approval in *Tillman,* 655 S.E.2d at 369)) (emphasis added). Thus, Plaintiff has failed to meet her burden of proof that the DRA is substantively unconscionable.

### c. Consideration

Finally, Plaintiff argues that there is no consideration because the arbitration agreement was signed after Plaintiff began working for Defendant. Plaintiff points to the principle that, in North Carolina, when an employee signs an agreement after they have begun working for an

7

employer, the agreement must be supported by new or separate consideration. *See Hejl v. Hood, Hargett & Associates, Inc.*, 674 S.E.2d 425, 428 (N.C. App. 2009).

However, this argument ignores the fact that Defendant also bound themselves to arbitration in the event of a dispute and mutual promises to arbitrate disputes is sufficient consideration. *See Howard*, 134 N.C.App. at 118-120; *O'Neil*, 115 F.3d at 275-76; *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373 (4th Cir. 1998). As in *O'Neil* and *Johnson*, both parties agreed to be bound by the arbitration process for the resolution of the disputes covered by the agreement. Consequently, this Court holds that the DRA was supported by adequate consideration.

Since the DRA is not procedurally or substantively unconscionable and is supported by valid consideration, it is a valid, written agreement to arbitrate that encompasses the dispute. Therefore, all four elements necessary for the Court to compel arbitration are met. Section 3 of the FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay trial of the action until such arbitration has been had in accordance with the terms of the agreement, . . . .

9 U.S.C. § 3. Thus this Court will direct the parties to proceed to arbitration on this dispute and stay judicial proceedings.

### d. Attorneys' Fees

Lastly, Defendants ask the Court to impose sanctions on the Plaintiff for those attorneys' fees that Defendants incurred in preparing the Motion to Dismiss and Reply memorandum. The Supreme Court has held that federal courts have inherent power to assess attorneys' fees against

a party that acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See, Chambers v. NASCO*, 501 U.S. 32, 43-50 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

In support of this motion, Defendants alleged that Plaintiff acted in wantonly and in bad faith in not dismissing this action after Defendants' counsel contacted Plaintiff's counsel to inform him of the arbitration provisions contained in the DRA and to request that his client voluntarily dismiss this action. The Fourth Circuit has previously stated in considering whether to impose attorney's fees under this standard that if a party conducts fraud upon the Court, this is cause to impose sanctions. *Kilborn v. Bakhir*, 2003 WL 21693707 at *1 (4th Cir. 2003). Additionally where a party delays or disrupts litigation, this can be reason to find bad faith and impose an assessment of attorney's fees. *Id.*

Evidence only that the Defendant told the Plaintiff to dismiss action and the Plaintiff did not do so is not sufficient to show evidence of bad faith or wanton conduct. There has been no evidence that Plaintiff disobeyed a court order or that she proceeded with litigation for bad faith, vextatiously, wantonly, or for oppressive reasons. *Id.* In addition, Plaintiff points out that the DRA states that "Ross Associates, acting alone or together, will not be disciplined or retaliated against for challenging the enforceability of part, or, all of the Agreement." (Defs. Ex. A, ¶6).

### III. CONCLUSION

For the foregoing reasons the Court finds that the Defendants' Motion to Dismiss or in the Alternative, to Stay This Action and Compel Arbitration. (Doc. No. 9) be **GRANTED IN PART AND DENIED IN PART**. This matter is hereby **STAYED** pending arbitration. Plaintiff

must submit her claim for arbitration within 30 days of this order and notify the Court when she has done so. Defendant's motion for attorneys' fees is hereby **DENIED**.

**SO ORDERED.**

Signed: July 7, 2017

Graham C. Mullen
United States District Judge